US District Court for the Middle District of Tennessee

Craig Cunningham )
Plaintiff, pro se )
)
v. )
) CIVIL ACTION NO.
)
Trans Union, Ocwen Loan Servicing LLC, Chase )
Defendants. )

**FILED**
DEC 31 2014 DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

Plaintiff's Original Complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Upon information and belief, Trans Union is a consumer reporting agency as defined by the Fair Credit Reporting Act, (hereafter FCRA) 15 USC 1692

    *[handwritten: TU address for service is 2 Baldwin Place P.O. Box 2000 Chester, PA 19022]*

3. Ocwen Loan Servicing, LLC is a mortgage servicer and ~~is operating from~~

    *[handwritten: can be served via Reg Agent Corporation Service Company 2711 Centerville RD Ste 400 Wilmington DE 19808]*

4. JP Morgan Chase is a bank and operating from 270 park avenue, New York, New York, 10017 and can be served there.

**Jurisdiction**

5. Jurisdiction of this court arises as the acts happened and the contract was breached in this county.

6. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

**FACTUAL ALLEGATIONS**

7. In 2014, the Plaintiff in the process of reviewing his credit report observed a foreclosure from GMAC Mortgage and Chase Mortgage on his report, which the Plaintiff believed should not be on his report.

8. Following an investigation by state and federal regulators, in 2012 it was discovered that there was a widespread practice by the largest mortgage servicers, including Chase and GMAC of false swearing, perjury, fraud, affidavits being signed outside the presence of a notary and without personal knowledge of the loan and account, but signed nonetheless, attesting the accuracy and amounts owed. The result of these investigations by most Attorney's general in the United States and other regulators was the independent foreclosure review and the National mortgage settlement, which authorized payments to consumers as a result of these practices. This was the largest consumer protection action in history.

9. Considering the foreclosures were executed using falsely sworn and perjured documents, that would probably constitute civil fraud at a minimum, if not criminal perjury and fraud.

10. The Plaintiff was a recipient of payments from the Independent Foreclosure review and national mortgage settlement for the property that was serviced and foreclosed by GMAC and national mortgage settlement for Chase, which is highly suggestive that the Plaintiff's mortgage servicing and foreclosure was improper and illegal and fraudulent practices using perjured and falsely sworn documents were used.

11. It is inaccurate and improper to report to the Plaintiff's credit report a foreclosure that was the result of perjury and fraud on the part of the mortgage servicers. This foreclosure was done improperly and should not have happened and is essentially fraud and theft by the mortgage servicer of the Plaintiff's equity and property.

### Problems with GMAC/Ocwen

12. The Plaintiff disputed the mortgage foreclosures with Trans Union in 2014 and the accounts were verified, of course. This led to another interesting revelation as GMAC sold all servicing rights for their loans to Ocwen in 2013 and GMAC mortgage declared chapter 11 Bankruptcy prior to 2014 as well. Since GMAC as a legal entity no longer exists, one must wonder who is reporting and verifying the tradeline listed under the name of GMAC. At all times relevant, the Plaintiff later discovered Ocwen was the sole entity responsible for reporting and verifying the information under the name of GMAC.

13. After several spirited conversations with Ally Bank, GMAC's successor organization, the Plaintiff was directed to contact Ocwen and was told in no uncertain terms that neither Ally bank, nor GMAC had anything to do with the credit reporting, and Ocwen confirmed they were reporting the foreclosure.

14. This is improper as well, since as a fundamental level, it is inaccurate for Ocwen to report any information to the Plaintiff's credit report under the name other than Ocwen. This violates the FDCPA as well as a false or misleading representation. Ocwen can't report and claim to be Wells Fargo or Bank of America on the Plaintiff's credit report any more than they can claim to be GMAC.

15. Reporting under an incorrect name is an issue that the Plaintiff sued Ocwen for

previously, Cunningham v Ocwen, MD Tennessee, 3:12-cv-00440, (2012) when Ocwen reported a Litton loan account under the name "Litton loan" instead of Ocwen the actual company servicing the loan, but as an unrepentant violator of the Plaintiff's rights and the FCRA, FDCPA, Defendant Ocwen simply doesn't care about what the law requires and will do anything in the name of the almighty dollar.

16. Defendant Ocwen as of late has been quite busy getting regulatory attention, first which resulted in a consent agreement in December 2013 with the Consumer Financial Protection Bureau and 49 state Attorney's General. They then were found to be in violation of the consent agreement by backdating thousands of loan modification denial notices in 2012 and continued doing so into 2014. They were recently fined $150M dollars with the New York Department of Financial Services and their executive chairman stepped down.

17. As a result of the illegal credit reporting, the Plaintiff was denied for a loan of $25,000 that he would have otherwise qualified for. The Bank's branch manager described the foreclosures as the "kiss of death" for the application stating that it would have been otherwise approved had it not been for the inaccurately reported foreclosure information.

### Problems with Chase

18. Chase has been no stranger to problems with credit reporting, foreclosures, and regulatory action. As with GMAC, they improperly foreclosed on the Plaintiff's property, stealing the Plaintiff's equity, and reported a foreclosure improperly to the Plaintiff's credit report after paying out money as part of the national

mortgage settlement to the Plaintiff, which is highly suggestive that there were similar fraudulent practices and false swearing.

19. Chase similarly had issues with credit card collections in 2012 when Linda Almonte uncovered massive levels of fraud , grossly inaccurate information on 23,000 credit card collection accounts that were being sold to collection agencies for pennies on the dollar. Even for pennies on the dollar, they were still so greedy they wanted to extract the maximum amount of money and falsely claimed the accounts all had judgments, when in fact they did not, and the amounts owed were inaccurate, with nearly 60% of the files containing a major error, including if they court had actually ruled for the bank. Linda recommended against the portfolio sale and Chase rewarded Linda's honestly and hard work by firing her.

20. In the Plaintiff's case, the Plaintiff's property and equity was improperly stolen through the use of fraudulent documents by Chase and compounded by their inaccurate reporting and verifying the foreclosure through the credit bureaus. This was the other part of the "kiss of death", according to the branch manager to the Plaintiff's $25,000 loan application which would have been approved had it not been for the inaccurately reported foreclosures.

## Trans Union problems

21. Trans Union did verify this disputed information about the mortgage servicers, which is the result of Trans Union's failure to conduct a reasonable investigation into the Plaintiff's dispute, which is a violation of the Fair credit reporting act. Trans Union has also failed to follow reasonable procedures to assure the maximum possible accuracy of the Plaintiff's consumer report.

22. Trans Union was previously sued by the Plaintiff previously in the same Cunningham v Ocwen for violations of the Fair Credit reporting act. Afterwards, and in retaliation for suing them the first time, Trans Union locked the Plaintiff's consumer file preventing the rank and file employees from accessing it as well as the "special handling" division of supervisors. The Plaintiff called multiple times in 2014 only to have the Plaintiff's calls sent to a "voicemail to nowhere" almost every time.
23. None of the Trans Union employees could access the Plaintiff's file, no representatives were available to speak with the Plaintiff, and all representatives were instructed to just send the Plaintiff's call to voicemail, which they did.
24. The Plaintiff was never told the department or person the voice mail belonged to, despite asking several times, was never given a direct phone number to call, and nobody called the Plaintiff back after he left multiple voicemails.
25. The Plaintiff called early in the day when it would presumably be slower, and also in the afternoon, but to no avail. The Plaintiff called multiple times in the same day trying to reach someone. Each and every call was placed into a voicemail with no response from Trans Union to any voicemails left.
26. The Plaintiff presumed that this was the only form of communication Trans Union was going to allow and disputed every negative item in 2014 on his credit report in a voicemail. More than 30 days passed, and no dispute results were sent to the Plaintiff, no disputes were initiated, and no "disputed" notations were put on these items on the Plaintiff's file. The information disputed was not conveyed to the data furnishers within 5 days. All of these are violations of the FCRA and the

Plaintiff's rights.

27. Interestingly enough, when the Plaintiff called December 2014 to seek deletion of the disputed items that were never investigated, Trans Union denied ever receiving <u>any</u> calls from the Plaintiff in 2014 other than one call on March 13th, 2014. Defendant Trans Union claimed that they had no record of the Plaintiff's calls or dispute.

28. This illustrates the complete retaliatory and deceptive plan by Trans Union to limit the Plaintiff's right to dispute and communicate with Trans Union representatives. This is a common retaliatory practice by Trans Union they use against consumers who dare to exercise their rights under the law in an attempt to frustrate and discourage them from calling, as opposed to changing their flawed and woefully inadequate credit reporting practices.

29. The scheme works like this: When the Plaintiff would call, all representatives would refuse to speak with the Plaintiff about his file and would instead send his calls to the "voicemail to nowhere." Most importantly, since the representatives could not access the Plaintiff's file, no record of the call would be made, which would then give plausible deniability to Trans Union regarding any future credit report disputes from the Plaintiff. This way, Trans Union could avoid speaking with the Plaintiff, avoid creating any evidence of the phone calls or disputes by the Plaintiff, and avoid having to deal with the Plaintiff claiming no knowledge of the Plaintiff's communication attempts and calls. Trans Union also deleted and destroyed evidence of the voicemails again to create plausible deniability that the Plaintiff never called.

30. The problem for Trans Union is that the Plaintiff actually had problems with his credit report that he had to dispute. The Fair Credit reporting act requires a consumer reporting agency to have trained representatives on hand to speak with consumers[1], and by engaging in this retaliatory behavior, the Plaintiff was denied his ability to speak with a Trans Union representative and Defendant Trans Union has failed to maintain a toll-free phone number for the Plaintiff to call where he can reach representatives to discuss his credit report[2]. This practice is not designed to assure the maximum possible accuracy of the Plaintiff's consumer file. This is a common, standard retaliatory practice by Trans Union they use against consumers who file lawsuits designed to punish them for daring to enforce their rights under the law.

## CAUSES OF ACTION:

## COUNT I

### Violations of the Fair Debt Collections Practices Act

31. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

32. The foregoing actions by Defendant Ocwen Violated the FDCPA by falsely reporting under the name of GMAC when the account in question was really owned by Defendant Trans Union.

## CAUSES OF ACTION:

## COUNT II

---

[1] 15 usc 1681(h)(c)
[2] 15 usc 1681(g)(C)(2)

## Violations of the Fair Credit Reporting Act

33. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

34. The Defendants violated the FCRA in multiple ways by reporting and verifying inaccurate information as well as actively prohibiting the Plaintiff from disputing and not having trained representatives on hand to respond to the Plaintiff's requests.

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $1,000 for each violation of the FCRA and FDCPA against Ocwen, statutory damages of $1,000 for each FCRA violation against each remaining defendant.

C. Actual damages in the amount of $25,000 and $60,000 against Defendant Ocwen and $60,000 against Defendant Chase and an injunction barring the defendants Chase and Ocwen from reporting these mortgage accounts and a penalty of $10,000 per day should they continue to do so and a court order requiring Trans Union to delete all negative information from the Plaintiff's file. Actual damages of $125,000 against Defendant Trans Union.

D. Pre-judgment interest from the date of the phone calls.

E. Punitive damages for all claims in the amount of $1,250,000 against Defendants

Trans Union, Punitive damages in the amount of $600,000 against Defendant Ocwen and Chase each individually.

F. Attorney's fees for bringing this action as applicable; and

G. Costs of bringing this action; and

H. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, tn 37211

615-348-1977

December 31tst, 2014