# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)

---

CRAIG CUNNINGHAM,
        Plaintiff,

CASE NO. 3:14-cv-02410

    vs.

Judge Aleta A. Trauger
Magistrate Judge Joe Brown

TRANS UNION; OCWEN LOAN
SERVICING LLC; and CHASE;
        Defendants.

---

## TRANS UNION LLC'S ANSWER TO PLAINIFF'S AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

---

Trans Union, LLC ("Trans Union"), by counsel, responds to Plaintiff's Amended Complaint (the "Complaint") as follows. For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

1.    The Plaintiff in this case is Craig Cunningham, a natural person and was [sic] resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste [sic] 248, Nashville, TN 37211 [sic]

**ANSWER**: Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

2.    Upon information and belief, Trans Union is a consumer reporting agency as defined by the Fair Credit Reporting Act, (hereafter FCRA) 15 USC 1692 and an [sic] be served via their attorney, Scott E Brady [sic] 4545 Northwestern Dr [sic], Zionsville, IN 46077.

Case 3:14-cv-02410   Document 55   Filed 04/13/15   Page 1 of 25 PageID #: 331

**ANSWER**:  Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

3.      Ocwen Loan Servicing, LLC is a mortgage servicer and can be served via their attorney, David Standa, 111 South Wacker Dr., Chicago, IL 60606.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

4.      JP Morgan Chase is a bank and operating from 270 park [sic] avenue [sic], New York, New York, 10017 and can be served there.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

**Jurisdiction**

5.      Jurisdiction of this court arises as the acts happened in this county.

**ANSWER**:   Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

6.      Venue in this District is proper in that the defendants [sic] transact business here, and the acts and transactions occurred here.

**ANSWER**:   Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

# FACTUAL ALLEGATIONS

## Background

7.      In 2014, the Plaintiff in the process of reviewing his credit report observed a foreclosure from GMAC Mortgage and Chase Mortgage on his report, which the Plaintiff believed should not be on his report.

**ANSWER**:  Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

8.      In part, the basis for this belief was payments that were made by Chase to the Plaintiff in relation to the National Mortgage Settlement, which are proof of wrongdoing in the mortgage foreclosure process by Chase against the Plaintiff.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

9.      Additionally, similar payments were made by GMAC to the Plaintiff for foreclosure related improprieties in relation to a different mortgage serviced by GMAC at the time.  This is additional prima facia evidence of wrongdoing that was evaluated by 49 Attorney Generals along with the US Department of Justice.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

Case 3:14-cv-02410   Document 55   Filed 04/13/15   Page 3 of 25 PageID #: 333

Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

10.     Following an investigation by state and federal regulators, in 2012 it was discovered that there was a widespread practice by the largest mortgage servicers, including Chase and GMAC of false swearing, perjury, fraud, affidavits being signed outside the presence of a notary and without personal knowledge of the loan and account, but signed nonetheless, attesting [sic] the accuracy and amounts owed.  The result of these investigations by most Attorney's [sic] general in the United States and other regulators was the independent foreclosure review and the National [sic] mortgage settlement, which authorized payments to consumers as a result of these practices.  This was the largest consumer protection action in history.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

11.     Considering the foreclosures were executed using falsely sworn documents, that would probably constitute civil fraud at a minimum, if not criminal perjury and fraud.

**ANSWER**:  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

12.     The Plaintiff was a recipient of payments from the Independent Foreclosure review and national mortgage settlement for the property that was serviced and foreclosed by GMAC and national mortgage settlement for Chase, which is direct, conclusive and prima facia evidence that the Plaintiff's mortgage servicing and foreclosure was improper and illegal and

fraudulent practices [sic] using falsely sworn documents under the penalty of perjury were used [sic].

**ANSWER**: Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

13.    It is inaccurate and improper to report to the Plaintiff's credit report a foreclosure that was the result of fraud on the part of the mortgage servicers. This foreclosure was done improperly and should not have happened and is essentially fraud and theft by the mortgage servicer of the Plaintiff's equity and property.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## Problems with GMAC/Ocwen

## Credit Reporting

14.    The Plaintiff disputed the mortgage foreclosures with Trans Union in 2014 and the accounts were verified, of course. This led to another interesting revelation as GMAC sold all servicing rights for their loans to Ocwen in 2013 and GMAC mortgage [sic] declared chapter 11 Bankruptcy [sic] prior to 2014 as well. Since GMAC as a legal entity no longer exists, one must wonder who is reporting and verifying the tradeline listed under the name of GMAC. At all times relevant, the Plaintiff later discovered Ocwen was the sole entity responsible for reporting and verifying the information under the name of GMAC.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge

or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

15.     Not to be content with the previous improper credit reporting, even after this lawsuit was filed, on March 12th, 2015, Ocwen once again verified a dispute through Trans Union regarding the information reported to the Plaintiff's consumer file. Regardless of any previous settlements with Ocwen, this represents a brand new, 2015 era cause of action unrelated and 100% not settled with Ocwen regarding the accuracy of the credit reporting for this account. The inaccurate information still remains, and the Ocwen/GMAC account was verified as accurate by Defendant Ocwen.

**ANSWER**:  Trans Union admits that it sent correspondence to Plaintiff dated March 12, 2015, regarding a dispute lodged by Plaintiff. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

16.     After several spirited conversations with Ally Bank, GMAC's successor organization, the Plaintiff was directed to contact Ocwen and was told in no uncertain terms that neither Ally bank [sic], nor GMAC had anything to do with the credit reporting, and Ocwen confirmed they were reporting the foreclosure. This is improper as well, since as a fundamental level, it is inaccurate for Ocwen to report any information to the Plaintiff's credit report under the name other than Ocwen.

**ANSWER**:  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

17.    It is not inaccurate to report a foreclosure that was the product of fraud and false swearing under the penalty of perjury in the course of conducting the foreclosure any more than it is to claim that a stolen vehicle is yours to the police when pulled over.

**ANSWER**:    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

### Debt Collection

18.    The Plaintiff is a consumer as defined by the FDCPA and the Plaintiff purchased the property serviced by GMAC for personal, family, or household purposes, thus the debt was incurred for personal use.  It was a single family house in Dallas, Tx [sic] that the Plaintiff purchased as he was getting out of the military and relocating to Dallas, and he lived in the property as his primary residence.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

19.    Defendant GMAC is a debt collector as defined by the FDCPA, since when they obtained the account for servicing, it was then in default.  The 6th Circuit has already concluded that even if a debt is treated by a servicer as if it is in default, it qualifies for the full protections of the FDCPA in **Bridge v Ocwen Federal Bank, FSB, F.3d, 1470148 (6th Cir 2012).** [sic]

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

20. By making inaccurate statements to the Plaintiff's consumer report, this is a false or misleading representation likely to confuse an unsophisticated consumer, which violates the FDCPA, 15 USC [sic] 1692(e)(2). By reporting and verifying the account as belonging to GMAC, this violates the FDCPA, 15 USC [sic] 1692(e)(14) at a minimum to include other provisions of 15 USC [sic] 1692(e). By verifying and reporting new information on March 12, 2015, this violates the FDCPA and constitutes a false or misleading representation. Ocwen can't report and claim to be Wells Fargo or Bank of America on the Plaintiff's credit report any more than they can claim to be GMAC.

**ANSWER**: Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

21. Reporting under an incorrect name is an issue that the Plaintiff sued Ocwen for previously, Cunningham v Ocwen, MD Tennessee [sic], 3:12-cv-00440, [sic] (2012) when Ocwen reported a Litton loan account under the name "Litton loan" [sic] instead of Ocwen the actual company servicing the loan, but as an unrepentant violator of the Plaintiff's rights and the FCRA, FDCPA Defendant Ocwen simply doesn't care about what the law requires and will do anything in the name of the almighty dollar.

**ANSWER**: Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## Problems with Chase

22. Chase also improperly foreclosed on the Plaintiff's property and was subject to regulatory penalties for doing and made payments to the Plaintiff as part of the national

mortgage settlement for these illegal practices during the foreclosure process with the Plaintiff's loan. These regulatory penalties are conclusive evidence of wrongdoing by Chase in the process of foreclosing on the Plaintiff's property. At a minimum, Chase improperly signed documents attesting to having actual knowledge of the Plaintiff's loan information when the individuals did not have actual knowledge of the Plaintiff's loan and signed documents related to the Plaintiff s loan outside of the presence of a notary despite claiming that the documents were notarized. This was in the course of a non-judicial foreclosure in Texas.

**ANSWER**: Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

23. Chase also reported inaccurate information to the Plaintiff's consumer report by reporting the improperly and illegal foreclosure as if there were no problems with the foreclosure. By engaging in fraud/false swearing in the foreclosure process and then reporting the foreclosure and then verifying the inaccurate information with the credit bureaus after the Plaintiff disputed the improper conduct in the foreclosure process. As a threshold issue, the Plaintiff contends that it is defacto inaccurate to report an improperly and illegal foreclosure to a consumer's credit report in any way, shape, or form and verifying this information violates 15 USC [sic] 1681(i) [sic] and 15 USC 1681(s-2)a [sic] and (s-2)b [sic].

**ANSWER**: Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

24. In the Plaintiff's case, the Plaintiff's property and equity of $60,000 was improperly stolen through the use of fraudulent documents by Chase and to add insult to injury,

their inaccurate reporting and verifying the foreclosure through the credit bureaus. This inaccurate credit reporting was the other part of the "kiss of death", according to the branch manager to the Plaintiff's $25,000 loan application which would have been approved had it not been for the inaccurately reported Chase and Ocwen foreclosures.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**Summary**

25.    As a result of the illegal credit reporting, the Plaintiff was denied for a loan of $25,000 that he would have otherwise qualified for. The Bank's branch manager described the foreclosures as the "kiss of death" for the application stating that it would have been otherwise approved had it not been for the inaccurately reported foreclosure information.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

26.    Additionally, the Plaintiff is entitled to recover his lost equity in both properties which was taken as a result of the improper foreclosures.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

**Trans Union problems**

27.    Trans Union has also failed to follow reasonable procedures to assure the maximum possible accuracy of the Plaintiff's consumer report, does not maintain a toll free

number for the Plaintiff to call to reach anyone to speak about his consumer report, and does not have trained representatives to speak with the Plaintiff.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph.

28.     Although Trans Union was previously sued by the Plaintiff previously [sic] for violating the FCRA, that case has no real relevance to this one other than the fact that the Plaintiff and Defendant names are the same.  All of the Plaintiff's claims occurred after the previous settlement, were not settled or barred by the previous settlement, and have no relation at all to the previous settlement.  The settlement occurred in 2013 and the new violations happened in 2014.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph.

29.     After the first lawsuit, and in retaliation for suing them the first time, Trans Union locked the Plaintiff's consumer file preventing the rank and file employees from accessing it as well as the "special handling" division of supervisors.  Each and every representative refused to speak with the Plaintiff and stated that they didn't have access to the Plaintiff's file at all.  The Plaintiff called numerous times in 2014 only to have the Plaintiff's calls sent to a "voicemail to nowhere" almost every time.  These voicemails were then deleted and no record of them was ever made, so Trans Union could have plausible deniability and claim the phone calls from the Plaintiff never happened, which is exactly what happened when the Plaintiff called to inquire as to why Defendant Trans Union did not respond to his new disputes in 2014.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph.

30.     Upon information and belief, Trans Union transferred the Plaintiff's file to the fraud department despite no fraud being claimed by the Plaintiff.  This is a standard retaliation practice by Trans Union to deny consumer's [sic] their ability to speak with trained

representatives at Trans Union and deny consumers access to a toll-free number where they can call during normal business hours.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the allegation that "Trans Union transferred the Plaintiff's file to the fraud department despite no fraud being claimed by the Plaintiff," which has the effect of a denial under Rule 8(b)(5).    Trans Union denies the remaining allegations contained in this paragraph.

31.    None of the Trans Union employees could access the Plaintiff's file, no representatives were available to speak with the Plaintiff, and all representatives were instructed to just send the Plaintiff's call to voicemail, which they did.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

32.    The Plaintiff was never told the department or person the voice mail belonged to, despite asking several times, was never given a direct phone number to call, and nobody called the Plaintiff back after he left multiple voicemails.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

33.    The Plaintiff called early in the day when it would presumably be slower, and also in the afternoon, but to no avail.  The Plaintiff called multiple times in the same day trying to reach someone.  Each and every call was placed into a voicemail with no response from Trans Union to any voicemails left.

**ANSWER**: Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

34. The Plaintiff presumed that this was the only form of communication Trans Union was going to allow and disputed every negative item in 2014 on his credit report in a voicemail. More than 30 days passed, and no dispute results were sent to the Plaintiff, no disputes were initiated, and no "disputed" notations were put on these items on the Plaintiff's file. The information disputed was not conveyed to the data furnishers within 5 days. All of these are violations of the FCRA and the Plaintiff's rights.

**ANSWER**: Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

35. Interestingly enough, when the Plaintiff called [sic] December 2014 to seek deletion of the disputed items that were never investigated, Trans Union denied ever receiving <u>any</u> calls from the Plaintiff in 2014 other than one call on March 13th, 2014. Defendant Trans Union claimed that they had no record of the Plaintiff's calls or dispute.

**ANSWER**: Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

36. This illustrates the complete retaliatory and deceptive plan by Trans Union to limit the Plaintiff's right to dispute and communicate with Trans Union representatives. This is a

common and intentional retaliatory practice by Trans Union they use against consumers who dare to exercise their rights under the law in an attempt to frustrate and discourage them from calling, as opposed to changing their flawed and woefully inadequate credit reporting practices.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

37.    The scheme works like this:    When [sic] the Plaintiff would call, all representatives would refuse to speak with the Plaintiff about his file and would instead send his calls to the "voicemail to nowhere."  Most importantly, since the representatives could not access the Plaintiff's file, no record of the call would be made, which commonly takes place when an agent of Trans Union accesses a consumer's credit report, which would then give plausible deniability to Trans Union regarding any future credit report disputes from the Plaintiff.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

38.    This way, Trans Union could avoid speaking with the Plaintiff, avoid creating any evidence of the phone calls or disputes by the Plaintiff, and avoid having to deal with the Plaintiff claiming no knowledge of the Plaintiff's communication attempts and calls.  Trans Union also deleted and destroyed evidence of the voicemails again to create plausible deniability that the Plaintiff never called.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

39.    The problem for Trans Union is that the Plaintiff actually had problems with his credit report that he had to dispute.  The Fair Credit reporting act [sic] requires a consumer reporting agency to have trained representatives on hand to speak with consumers in violation of 15 USC [sic] 1681(h)(c)[1] [sic], and by engaging in this retaliatory behavior, the Plaintiff was denied his ability to speak with a Trans Union representative and Defendant Trans Union has

---

[1] Any consumer reporting agency shall provide trained personnel to explain to the consumer any information furnished to him pursuant to section 1681g [sic] of this title.

failed to maintain a toll-free phone number for the Plaintiff to call where he can reach representatives to discuss his credit report in violation of 16 [sic] USC [sic] 1681(b)(C)(2)[2] [sic]. This practice is not designed to assure the maximum possible accuracy of the Plaintiff's consumer file in violation of 15 USC [sic] 1681(e)(b)[3] [sic]. This is a common, standard retaliatory practice by Trans Union they use against consumers who file lawsuits designed to punish them for daring to enforce their rights under the law.

**ANSWER**:   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the allegation that "Plaintiff actually had problems with his credit report that he had to dispute," which has the effect of a denial under Rule 8(b)(5). Trans Union states that the allegation that "[t]he Fair Credit reporting act [sic] requires a consumer reporting agency to have trained representatives on hand to speak with consumers," along with the allegations in the footnotes of this paragraph, are legal conclusions and, so stating, denies them. Trans Union denies the remaining allegations contained in this paragraph.

40.    Additionally, according to a January 13, 2000 press release by the FTC, Trans Union was fined a million dollars by the Federal Trade Commission for engaging in similar behavior, which resulted in blocked calls by consumers and unreasonably long wait times for an agent, the net result being that consumers were illegally prevented from having access to a toll free number to reach trained agents at Trans Union in violation of the FCRA. The FTC agents were quotes [sic] as saying *"The reality is that consumers never got the access to the consumer reporting agencies that the law guarantees... These cases demonstrate in no uncertain terms that it's time for Equifax, Experian, and Trans Union to pick up the phone and meet their*

---

[2] in [sic] the case of a consumer reporting agency described in section 1681a(p) of this title, a toll-free telephone number established by the agency, at which personnel are accessible to consumers during normal business hours; [sic]
[3] Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates [sic]

*obligations to consumers."* Similarly, in this case, Defendant Trans Union is proactively blocking and refusing to field calls from the Plaintiff, which is a violation of the FCRA in retaliation for the Plaintiff's previous lawsuit.

**ANSWER**: Trans Union denies the allegations contained in this paragraph. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

41. These are not reasonable procedures designed to achieve the maximum possible accuracy of the Plaintiff's consumer report, and it is a very clear violation for which Trans Union has already been penalized for by the FTC to intentionally block and not maintain a toll free number for consumers to call. Additionally, the FCRA requires trained representatives to be on hand to answer the calls from consumers, and in the Plaintiff's case, there are none.

**ANSWER**: Trans Union denies the allegations contained in this paragraph. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

## Summary

42. In conclusion, Trans Union has engaged in a retaliatory practice due to the Plaintiff exercising his rights under the law. Trans Union's violations relate to their illegal practice of not maintaining a toll-free number for the Plaintiff to call, not maintaining trained staff to speak with the plaintiff [sic], and not engaging in practices that are not designed to ensure the maximum possible accuracy of the Plaintiff's consumer file, and [sic] The [sic] Plaintiff has made no covenant to never, ever sue Trans Union for anything in the future, no matter what. The Plaintiff made no covenant to never, ever call Trans Union. Any previous settlements were limited through the year of 2013, while these current violations are new, unsettled claims that occurred after the previous 2013 settlement in the year of 2014.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

## CAUSES OF ACTION:

## COUNT I

### Violations of the Fair Debt Collections Practices Act

43.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

44.    The foregoing actions by Defendant Ocwen violated the FDCPA by making false or misleading representations in connection with collecting on a debt and verifying the information they reported to the consumer reporting agencies.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## CAUSES OF ACTION:

## COUNT II

### Violations of the Fair Credit Reporting Act

45.    Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

46.    The Defendant Trans Union violated the FCRA in multiple ways by actively blocking calls from the Plaintiff, not maintaining a toll free number for the Plaintiff to call, and not having trained representatives on hand to respond to the Plaintiff's requests.  The other defendants [sic] violated the FCRA by verifying inaccurate information on the Plaintiff's file.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT III

47.    Improper foreclosure and loss of equity.  Both Ocwen and Chase improperly foreclosed on the properties in question and had the effect of depriving the Plaintiff of his equity in those properties.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## PRAYER FOR DAMAGES AND RELIEFS

A.    WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant [sic] for the following:

B.    Statutory damages of $1,000 for each violation of the FCRA and FDCPA against Ocwen, statutory damages of $1,000 for each FCRA violation against each remaining defendant [sic].

C.    Actual damages in the amount of $25,000 for a credit denial and $60,000 for lost equity against Defendant Ocwen and $60,000 against Defendant Chase for lost equity and [sic] $25,000 for credit denials and [sic] an injunction barring the defendants [sic] Chase and Ocwen from reporting these mortgage accounts and [sic] a penalty of $10,000 per day should they continue to do so and [sic] a court order requiring Trans Union to delete all negative information from the Plaintiff's file.  Actual damages of $125,000 against Defendant Trans Union.

D.      Pre-judgment interest from the date of the phone calls.

E.      Punitive damages for all claims in the amount of $ 1,250,000 against Defendants Trans Union, Punitive [sic] damages in the amount of $600,000 against Defendant Ocwen and Chase each individually.

F.      Attorney's fees for bringing this action as applicable; and [sic]

G.      Costs of bringing this action; and

H.      For such other and further relief as the Court may deem just and proper [sic]

**ANSWER:**      Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## AFFIRMATIVE DEFENSES

1.      Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.

2.      Plaintiff's state law and common law claims are pre-empted by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

3.      Trans Union's reports concerning Plaintiff were true or substantially true.

4.      Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.

5.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

6.      Plaintiff's claims are barred, in whole or in part, by 15 U.S.C. §§ 1681h(e) and/or 1681t.

7.      At all relevant times, Trans Union acted within the absolute and qualified privileges afforded it under the FCRA, the United States Constitution, applicable State Constitutions and the common law.

8.     Plaintiff's claims are barred, in whole, or in part, by the equitable theories of estoppel, waiver and laches.

9.     Plaintiff has failed to take reasonable steps to mitigate his damages, if any.

10.     Plaintiff's damages are the result of acts or omissions committed by Plaintiff.

11.     Plaintiff's damages are the result of acts or omissions committed by the other parties over whom Trans Union has no responsibility or control.

12.     Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.

13.     Any claim for exemplary or punitive damages asserted by Plaintiff violates Trans Union's rights under the Due Process and Excessive Fines clauses of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State Constitutions and under the First Amendment of the United States Constitution and the analogous provisions of applicable State Constitutions.

14.     Trans Union reserves the right to assert additional defenses as may become apparent through additional investigation and discovery.

WHEREFORE, Defendant Trans Union, LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Amended Complaint, and that Trans Union, LLC, be awarded its costs incurred in defending this action, along with such other relief as this Court deems equitable and just.

# AMENDED COUNTERCLAIM

## BREACH OF CONTRACT

1.       On or about May 2, 2012, Plaintiff filed a Fair Credit Reporting Act ("FCRA") case against Trans Union in the United States District Court for the Middle District of Tennessee (the "Lawsuit").  See Cunningham v. Ocwen Financial, No. 3:12-cv-00440 (M.D. Tenn. May 2, 2012).

2.       The Lawsuit alleged that Trans Union violated the FCRA by reporting inaccurate information on Plaintiff's Trans Union credit file and by continuing to report such inaccurate information following Plaintiff's disputes and Trans Union's reinvestigations of same.   See Exhibit A, Plaintiff's Prior Complaint (the "Prior Complaint").

3.       On or about May 23, 2013, Plaintiff executed a Settlement Agreement And Release (the "Agreement") with Trans Union, resolving Plaintiff's claims against Trans Union in the Lawsuit.   See Exhibit B, Settlement Agreement And Release, a true and accurate copy of which will be filed under seal upon the entry of a Protective Order in this matter.[4]

4.       As part of the Agreement, Plaintiff received and reviewed a copy of his Trans Union consumer disclosure, dated May 22, 2013 (attached and incorporated into the Agreement as Exhibit A), confirmed that all information contained within the disclosure was accurate and agreed that such reporting would not provide the basis for any future claims against Trans Union.

5.       The Agreement is binding and enforceable.

---

[4] In its March 12, 2015 Order, the Court advised that Trans Union may file the Agreement under seal and requested that Trans Union promptly circulate a protective order and submit it to the Magistrate Judge for approval.  See Order [Doc. No. 36].  On March 18, 2015, Trans Union circulated a proposed Stipulated Protective Order (the "Order"). However, Trans Union anticipates that submission of the Order may be delayed, as Plaintiff refused to review the electronic copy provided to him or otherwise communicate with Trans Union by email, demanding instead that all communications be limited to regular mail.

6. Pursuant to the terms of the Agreement, Plaintiff forever released and discharged Trans Union from any and all claims, actions, causes of action and suits of any kind, known or unknown, that were asserted or that could have been asserted in the Lawsuit.

7. Trans Union fulfilled all of its duties and obligations under the Agreement.

8. On May 28, 2013, Plaintiff and Trans Union filed a Stipulation Of Dismissal of the Lawsuit, with prejudice. See Stipulation Of Dismissal [Doc. No. 118], Cunningham v. Ocwen Financial, No. 3:12-cv-00440 (M.D. Tenn. May 28, 2013).

9. On December 31, 2014, Plaintiff filed the instant action in the United States District Court for the Middle District of Tennessee. See Complaint [Doc. No. 1] (the "Present Complaint").

10. On March 27, 2015, Plaintiff filed an Amended Complaint in the instant action. See Amended Complaint [Doc. No. 48] (the "Amended Complaint").

11. Plaintiff claims in the Present Complaint and the Amended Complaint that Trans Union reported inaccurate information on Plaintiff's Trans Union credit file that was reporting at the time of the Lawsuit and for which Plaintiff could have asserted claims in the Lawsuit.

12. Additionally, Plaintiff claims in the Present Complaint and the Amended Complaint that Trans Union reported inaccurate information on Plaintiff's Trans Union credit file that Plaintiff previously confirmed was accurately reporting and would not provide the basis for any future claims against Trans Union.

13. Plaintiff has materially breached the Agreement by filing the Present Complaint and the Amended Complaint and asserting claims against Trans Union that were, or could have been, asserted in the Lawsuit and that were therefore discharged pursuant to the Agreement.

14. Plaintiff has materially breached the Agreement by filing the Present Complaint and the Amended Complaint and asserting claims against Trans Union regarding information

that Plaintiff confirmed was accurately reporting and would not provide the basis for any future claims against Trans Union.

15. As a direct and proximate result of Plaintiff's breach of the Agreement, Trans Union was, and will continue to be, injured and damaged in amounts to be proven at trial. These damages include, but are not limited to, the time, effort and attorneys' fees incurred by Trans Union in responding to the Present Complaint and the Amended Complaint and in enforcing the terms of the Agreement.

16. This Court has jurisdiction over Trans Union's Counterclaim for Breach Of Contract pursuant to 28 U.S.C. § 1367.

WHEREFORE Trans Union, LLC, by counsel, respectfully requests that judgment be entered in its favor and against Plaintiff on Trans Union's Amended Counterclaim for Breach Of Contract and that Trans Union, LLC be awarded fees and costs incurred in defending this action and prosecuting its Amended Counterclaim, including reasonable attorneys' fees, along with such other relief as the Court deems equitable and just.

Respectfully submitted,


_s/ Scott E. Brady_
Scott E. Brady, Esq. (IN #30534-49)
(Admitted _Pro Hac Vice_)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  sbrady@schuckitlaw.com

_Lead Counsel for Defendant Trans Union, LLC_


David M. Anthony, Esq. (TN #019951)
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
Telephone:  (615) 238-6315
Fax:  (615) 687-6997
E-Mail:  danthony@bonelaw.com

_Local Counsel for Defendant Trans Union, LLC_

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **13th day of April, 2015**. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

| David F. Standa, Esq.<br>dstanda@lockelord.com | Phillip P. Welty, Esq.<br>pwelty@gsrm.com |
|---|---|
| John R. Wingo, Esq.<br>john.wingo@stites.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **13th day of April, 2015**, properly addressed as follows:

| **Pro Se Plaintiff**<br>Craig Cunningham<br>5543 Edmondson Pike, Suite 248<br>Nashville, TN 37211 | |
|---|---|

*s/ Scott E. Brady*
Scott E. Brady, Esq. (IN #30534-49)
(Admitted *Pro Hac Vice*)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077
Telephone: 317-363-2400
Fax: 317-363-2257
E-Mail: sbrady@schuckitlaw.com

*Counsel for Defendant Trans Union, LLC*