IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:14-cv-02410 ) Judge Trauger/Brown |
| TRANS UNION, *et al.*, | ) ) |
| Defendants. | ) |

To: The Honorable Aleta A. Trauger, United States District Judge.

## REPORT AND RECOMMENDATION

Before the Court are Plaintiff's Motion to Stay Pending the Completion of Discovery (Doc. 75); Defendant JPMorgan Chase Bank N.A.'s ("Chase") Motion to Dismiss, or Alternatively, Motion for a More Definitive Statement (Doc. 23); Defendant Ocwen Loan Servicing LLC's ("Ocwen") Motion to Dismiss (Doc. 26); and Defendant Trans Union, LLC's ("Trans Union") Motion for Judgment on the Pleadings. (Doc. 62)

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion to Stay (Doc. 75) be **DENIED**; that Defendant Chase's Motion to Dismiss (Doc. 23) be **GRANTED;** that Defendant Ocwen's Motion to Dismiss (Doc. 26) be **GRANTED**; and that Defendant Trans Union's Motion for Judgment on the Pleadings (Doc. 62) be **GRANTED**.

### I.   INTRODUCTION AND BACKGROUND

Plaintiff filed his Complaint on December 31, 2014. (Doc. 1) Defendant Trans Union filed an Answer, in which it asserted a Counterclaim. (Doc. 45) Plaintiff filed an Amended Complaint and alleged: (I) violations of the Fair Debt Collections Practices Act ("FDCPA"); (II) violations of the Fair Credit Reporting Act ("FCRA"); and (III) improper foreclosure and loss of

equity. (Doc. 48) Defendant Trans Union filed an Answer, in which it asserted an Amended Counterclaim for Breach of Contract. (Doc. 55) Plaintiff filed an Answer. (Doc. 67)

Defendant Chase filed a Motion to Dismiss or Motion for a More Definitive Statement, to which Plaintiff filed a Response. (Docs. 23, 32) Defendant Chase filed a Supplement Memorandum in Support of its Motion, to which Plaintiff filed a Response. (Docs. 65, 77)

Defendant Ocwen filed a Motion to Dismiss, to which Plaintiff filed a Response. (Docs. 26, 42) Defendant Ocwen filed a Reply and a Supplement to that Reply. (Docs. 47, 64) Plaintiff also filed a "Supplemental Reply." (Doc. 68)

Defendant Trans Union filed a Motion for Judgment on the Pleadings, to which Plaintiff filed a Response. (Docs. 62, 69) Defendant Trans Union filed a Reply. (Doc. 99) Plaintiff's Motion for Leave to File a Sur-Reply was denied. (Docs. 91, 95) The action was referred to the Magistrate Judge. (Doc. 5) Therefore, these matters are properly before the Court.

## II. STANDARD OF REVIEW

### A. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "The party seeking a stay of proceedings has the burden of establishing both the 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order.'" *Family Serv. Ass'n of Steubenville, Ohio v. Wells Tp.*, No. 2:12–cv–135, 2014 WL 972178, at *2 (S.D. Ohio Mar. 12, 2014)(quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

"There is no precise test in this Circuit for when a stay is appropriate. However, district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) "[A] court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council*, 565 F.2d at 396.

### B. Motion to Dismiss

Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6) governs motions to dismiss for failure to state a claim. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). A complaint will survive a motion to dismiss if it includes: (1) facts to support a plausible claim; (2) more than a recital of elements of a cause of action; and (3) facts that, taken as true, raise the right to relief above the level of speculation. *Bell Atl. Corp.* at 555-56.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (second alteration in original)(quoting FED. R. CIV. P. 8(a)(2)). The pleading standard in FED. R. CIV. P. 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft,* 556 U.S. at 678-79.

When a plaintiff is *pro se*, the Court will review the plaintiff's pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 *reh'g denied*, 405 U.S. 948 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005)(citation omitted)(unpublished opinion).

When considering a motion to dismiss, the Court "may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the document is referred to in the complaint and is central to the plaintiff's claim." *Gardner v. Quicken Loans, Inc.,* 567 F. App'x 362, 364-65 (6th Cir. 2014)(citation and internal quotation omitted)(unpublished case). Therefore, the Magistrate Judge "may consider documents relating [to] the note, mortgage, assignment, loan modification process, and foreclosure that are referenced in the complaint and integral to [Plaintiff's] claims." *Gardner,* 567 F. App'x at 365.

### C. Motion for Judgment on the Pleadings

FED. R. CIV. P. 12(c) governs motions for judgment on the pleadings, and provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Unlike summary judgment, which requires evidence that creates a material issue of fact, a motion under 12(c) assumes that the factual allegations in the complaint are true and asks whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp.*, 463 F.3d 478, 487 (6th Cir. 2006).

"The standard of review applicable to a motion for judgment on the pleadings under [FED. R. CIV. P.] 12(c) is the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "For purposes of

4

the 12(c) motion, all well-pleaded material allegations of the pleadings must be taken as true and the motion is granted only when no material issue of fact exists and the moving party is entitled to judgment as a matter of law." *Ross, Brovins & Oehmke, P.C.*, 463 F.3d at 487.

"Although our decision rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)(citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III. ANALYSIS

#### A. Plaintiff's Motion to Stay

The Plaintiff seeks "a stay of all pending motions" pending the completion of discovery because "[d]iscovery is needed to clarify matters relating to the specific details of the foreclosures." (Doc. 75, ¶¶ 2-3) Plaintiff asserts that "as Trans Union is seeking summary judgment on the pleadings, it is inherently unfair and prejudicial to Plaintiff to allow summary judgment without any sort of discovery having taken place. (Doc. 75, ¶ 22) He cites FED. R. CIV. P. 56(d) to support his assertion that he "should be afforded a meaningful opportunity to establish . . . facts, which are essential to justify his opposition to summary judgment." (Doc. 75, ¶ 24)

However, neither Trans Union nor any of the other Defendants has made a motion for summary judgment. Rather, Defendants Chase and Ocwen have made Motions to Dismiss Pursuant to Rule 12(b)(6), and Defendant Trans Union has made a Motion for Judgment on the Pleadings Pursuant to Rule 12(c). (Docs. 23, 26, 62) A motion for summary judgment must be brought under FED. R. CIV. P. 56. Defendants brought motions under FED. R. CIV. P. 12, not FED. R. CIV. P. 56. Therefore, Defendants have not brought motions for summary judgment.

Further, in the Initial Case Management Order on April 21, 2015, the Court wrote that "[t]he parties agree that discovery is stayed pending rulings on all dispositive motions, unless otherwise ordered by the court." (Doc. 58, ¶ F). The Court will follow the Initial Case Management Order and does not order otherwise. The Court finds that ruling on the pending dispositive motions, rather than staying those motions until the completion of discovery, upholds "economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 354. Therefore, Plaintiff's Motion to Stay Pending the Completion of Discovery should be **DENIED**.

Since Plaintiff's Motion to Stay should be denied, the Court may rule on the Motions to Dismiss and Motion for Judgment on the Pleadings.

### B. Chase's Motion to Dismiss

Plaintiff's claims arise from an observation he made in 2014 of a foreclosure from "GMAC Mortgage and Chase Mortgage" on his credit report, which he believed should not have been on the report. (Doc. 48, p. 2) Concerning Defendant Chase, Plaintiff alleges: (I) violations of the FCRA; and (II) improper foreclosure and loss of equity. (Doc. 48, ¶¶ 46-47)

Here, even accepting the allegations as true and liberally construing Plaintiffs' claims, the Magistrate Judge finds that both claims fail as a matter of law. Since both of Plaintiff's claims rely on the fact that Chase wrongfully foreclosed on Plaintiff's property, Plaintiff must plead some facts to support a plausible claim that the foreclosure was improper. Plaintiff's Complaint and Amended Complaint are long on conclusions and short on facts.

Plaintiff asserts that Chase "reported inaccurate information by reporting the improperly [sic] and illegal foreclosure as if there were no problems with the foreclosure." (Doc. 48, ¶ 23) Plaintiff also alleges that payments made by Chase "as part of the national mortgage settlement" are "conclusive evidence of wrongdoing by Chase in the process of foreclosing on the Plaintiff's

6

property." (Doc. 48, ¶ 22) However, in his Amended Complaint, Plaintiff does not give any facts about the property in question. No address or reference numbers are provided. Plaintiff did not provide the Court with any documentation related to the alleged payments made by Chase in his Complaint or Amended Complaint.

Later, in his Response to Chase's Supplemental Statement, Plaintiff did provide what he calls an "Independent Foreclosure Review Letter." (Doc. 77, pp. 5-6) Plaintiff also provided a disc of recorded telephone calls[1], one of which he alleges directly relates to the "Independent Foreclosure Review Letter." (Doc. 105) The specific call is labeled "call_18-32-31_out_8889829105 indep foreclosure review.mp3" ("the Recorded Call").

Plaintiff states that the agent with whom he spoke "confirmed that the Plaintiff did have a record relating to an improper foreclosure (8:12)." (Doc. 77, ¶ 7) However, upon listening to the Recorded Call, it is clear that the agent never confirms that the foreclosure was improper. The agent only says, "I did find a record for you. Apparently your mortgage was with JP Morgan Chase." The agent then forwards Plaintiff to the department that deals specifically with JP Morgan Chase mortgages.

Plaintiff asserts that "the [Recorded Call] and letter now provide support that an improper foreclosure happened." (Doc. 77, ¶ 18) However, Plaintiff is mistaken. In the Recorded Call, a recorded female voice explains that "borrowers whose primary residence was in foreclosure in 2009 or 2010 and whose servicer is participating in the agreement were mailed a payment regardless of whether a request for review form was submitted under the Independent

---

1 Plaintiff provided little to no way for the Court to determine which calls were relevant to Plaintiff's claims, which resulted in the Magistrate Judge sifting through audio files. The dates and times of the recorded calls were not documented. Further, many of the calls were generally inaudible and rambling. Indeed, at least two calls appear to be totally unrelated to Plaintiff's claims, and have to do, instead, with rental vacation property.

Foreclosure Review process." Therefore, those who received payments, including Plaintiff, did not necessarily receive those payments because their mortgages had been improperly foreclosed, but rather because they fit certain criteria, namely they had a primary residence in foreclosure in 2009 or 2010 and their servicer participated in the agreement.

Although Plaintiff does provide evidence that the "Independent Foreclosure Review Letter" he received was related to a JP Morgan Chase mortgage, Plaintiff does not provide enough facts to support a plausible claim that Chase improperly foreclosed on Plaintiff's property. Here, the facts, taken as true, do not raise the right to relief above the level of speculation. Therefore, Plaintiff's claim of improper foreclosure fails as a matter of law.

As for the second claim, Plaintiff asserts that Chase violated the FCRA "by verifying inaccurate information on the Plaintiff's file." (Doc. 48, ¶ 46) Plaintiff alleges that Chase specifically violated 15 U.S.C. §§ 1681i, 1681s-2(a), and 1681s-2(b). (Doc. 48, ¶ 23)

First, 15 USC § 1681i concerns procedure in case of disputed accuracy, and states that "a reasonable reinvestigation" is required "if the completeness of inaccuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and *the consumer notifies the agency directly, or indirectly through a reseller, of such dispute*." 15 U.S.C. § 1681i(a)(1)(A)(emphasis added). Nowhere does Plaintiff allege or provide documentation to show that he "notifie[d] the agency directly, or indirectly through a reseller, of such dispute." Since there is no indication before the Court that Plaintiff notified Chase of a dispute, Plaintiff's claim that Chase violated 15 USC § 1681i fails as a matter of law.

Next, 15 U.S.C. § 1681s-2(a) concerns responsibilities of furnishers of information to consumer reporting agencies, and states that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable

cause to believe that the information is inaccurate." 15 USC § 1681s-2(a)(1)(A). The statute states that "the term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 USC § 1681s-2(a)(1)(D). As discussed above, Plaintiff's assertions regarding Chase's behavior, namely it's national mortgage settlement payment to Plaintiff, do not show that "a reasonable person [would] have substantial doubts about the accuracy of the information." Since the Magistrate Judge cannot infer "more than the mere possibility" that Chase violated 15 USC § 1681s-2(a), Plaintiff's claim fails as a matter of law.

Finally, 15 U.S.C. § 1681s-2(b) also concerns responsibilities of furnishers of information to consumer reporting agencies, specifically the duties of furnishers of information upon notice of dispute. An essential element is that a party must "receiv[e] notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). As stated above, nowhere does Plaintiff allege or provide documentation to show that Chase "receiv[ed] notice pursuant to section 611(a)(2) [§ 1681i]." Since the Magistrate Judge cannot infer "more than the mere possibility" that Chase violated 15 USC § 1681s-2(b), Plaintiff's claim fails as a matter of law.

Since Plaintiff's claims that Chase violated the FCRA and improperly foreclosed on Plaintiff's property both fail as a matter of law, Defendant Chase's Motion to Dismiss Pursuant to Rule 12(b)(6) should be **GRANTED**.[2]

---

[2] Since Plaintiff's claims against Chase should be dismissed, the Magistrate Judge does not find it necessary to address Chase's Alternative Motion for a More Definite Statement.

### C. Ocwen's Motion to Dismiss

Plaintiff alleges: (I) violations of the FDCPA; (II) violations of the FCRA; and (III) improper foreclosure and loss of equity against Defendant Ocwen. (Doc. 48, ¶¶ 44, 46, 47)

Ocwen asserts that Plaintiff's claims against it should be dismissed for failure to state a claim upon which relief can be granted. Specifically, Ocwen asserts that Plaintiff released Ocwen from "any and all claims he had against it" as part of a settlement of a previous case in which Plaintiff sued Ocwen. (Doc. 27, p. 1) Ocwen claims that Plaintiff's release includes the pending claim, and that this action should be dismissed. (Doc. 27, p. 5) Ocwen further asserts that even if the release did not bar Plaintiff from filing the instant suit, Plaintiff did not properly plead his claims because he failed to establish the applicability of the FDCPA. (Doc. 27, pp. 1, 5)

Disputes arose between Plaintiff and Ocwen regarding credit reporting on a specific loan related to Plaintiff's real property located in Grapevine, Texas. (Doc. 27, Ex. 1, p. 1) Plaintiff signed a "Confidential Settlement and Release Agreement" with Ocwen Financial Corporation on October 27, 2014 ("the Ocwen Release"), which contained the following language:

> Borrower . . . hereby unconditionally, irrevocably, forever and fully releases, acquits and forever discharges Ocwen Financial Corporation . . . of and from ***any and all claims*** . . . which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Action, the Property, the Note, the Mortgage, or the Loan. The Borrower also specifically waives and releases . . . any other claims they may have, whether known or unknown, fixed or contingent under . . . the Fair Debt Collection Practices Act ("FDCPA") . . . [or] the Fair Credit Reporting Act ("FCRA") . . . concerning the Note, the Mortgage, the Loan, and/or the Action.

(Doc. 27, Ex. 1, pp. 2-3)(emphasis added) Plaintiff and Ocwen disagree as to whether the instant suit is barred by the Ocwen Release. Plaintiff asserts that the instant suit "represents a brand new, 2015 era cause of action unrelated and 100% not settled with Ocwen." (Doc. 48, ¶ 15), Ocwen

asserts that "Plaintiff's release of 'all claims' against Ocwen includes the pending claims." (Doc. 27, p. 5)

As for Plaintiff's first two causes of action, Plaintiff alleges that Ocwen violated the FDCPA and the FCRA. However, in the Ocwen Release, Plaintiff released Ocwen from "any and all claims" he may have "whether known or unknown" under the FDCPA and the FCRA. (Doc. 27, Ex. 1, p. 2) Therefore, Plaintiff's first two causes of action are barred.

As for Plaintiff's third cause of action, Plaintiff asserts that Ocwen "improperly foreclosed on the properties in question and had the effect of depriving the Plaintiff of his equity in those properties." (Doc. 48, ¶ 46) It is not clear to which properties Plaintiff is referring. The only property to which Plaintiff specifically refers with regard to Ocwen is "a single family house in Dallas, Tx." (Doc. 48, ¶ 18) Plaintiff's previous dispute with Ocwen involved property in Grapevine, Texas. The Court takes judicial notice that Grapevine, Texas is a suburb to the northwest of Dallas, Texas. Therefore, the Magistrate Judge infers that Plaintiff is referring to the Grapevine, Texas property here. Plaintiff has provided no indication that the foreclosed upon property is one other than the Grapevine property.

As best as the Magistrate Judge can tell, the property which Plaintiff alleges is the subject of an improper foreclosure by Ocwen is the same as the Grapevine property referenced in the Ocwen Release. Plaintiff agreed to forever and fully release "any and all claims" which were related to and/or directly or indirectly involved "the Action, the Property, the Note, the Mortgage, or the Loan," which would include the Grapevine property (Doc. 27, Ex. 1, p. 3) Therefore, Plaintiff's third cause of action is barred.

The Magistrate Judge finds that Plaintiff released the claims that are the subject matter of the three causes of action that he raised against Ocwen in his Amended Complaint. Since

Plaintiff is barred by the terms of the Ocwen Release from making the claims found in his Amended Complaint, those claims must be stricken from the Complaint. Without those claims, Plaintiff has made no claims against Owen and Defendant Ocwen's Motion to Dimiss Pursuant to Rule 12(b)(6) should be **GRANTED**.

### D. Trans Union's Motion for Judgment on the Pleadings

Plaintiff alleges one cause of action against Defendant Trans Union: violations of the FCRA. (Doc. 48, ¶ 46) Plaintiff asserts that Trans Union violated the FCRA "by actively blocking calls from the Plaintiff, not maintaining a toll free number for the Plaintiff to call, and not having trained representatives on hand to respond to the Plaintiff's requests." (Doc. 48, ¶ 46)

Plaintiff had also brought a previous action against Trans Union in this Court and entered into a Settlement Agreement and Release ("the Trans Union Release") on May 23, 2013. Case No. 3:12-cv-00440.

Trans Union asserts that Plaintiff's claims are precluded "by the express terms of the Parties' prior Settlement Agreement and Release because they could have been asserted in Plaintiff's prior lawsuit and because Plaintiff expressly released all claims relating to them that could have been asserted." (Doc. 63, pp. 1-2, ¶ B) Trans Union also asserts that even if its reporting of the mortgage accounts was not accurate, Plaintiff's claims fail as a matter of law. (Doc. 63, p. 2, ¶ C)

The Trans Union Release contained the following language:

> Plaintiff . . . hereby releases and forever discharges Trans Union . . . from ***any and all claims*** . . . which Plaintiff had, now has, or may have, on account of, arising out of, based upon or in any manner connected with, any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement . . . or which could have been asserted in the Lawsuit or which relate in any manner to the Plaintiff's credit history information as reported by Trans Union.

(Doc. 57, ¶ 4)(emphasis added)

Plaintiff asserts that "[a]lthough Trans Union was previously sued by the Plaintiff . . . for violating the FCRA, that case has no real relevance to this one other than the fact that the Plaintiff and Defendant names are the same." (Doc. 48, ¶ 28) Plaintiff asserts that "Plaintiff's claims against Trans Union are not related to the reporting of the Plaintiff's mortgage accounts, at all . . . Plaintiff's caims [sic] are not based on the items in the credit report or the accuracy/inaccuracy of those items . . . [and] Plaintiff's claims are not defeated by res-judica [sic] as they could not have been asserted in the previous lawsuit." (Doc. 69, ¶¶ 20-22) Plaintiff alleges that he called Trans Union to "speak about his consumer report," but "none of the Trans Union employees could access the Plaintiff's file." (Doc. 48, ¶¶ 27, 31)

In response, Trans Union asserts that Plaintiff agreed that his disputed accounts were accurately reporting as foreclosed and that such reporting would not provide the basis for any future claims against Trans Union. (Doc. 63, p. 5) Trans Union asserts that Plaintiff's current claims are based on the same disputed accounts which were the subject of the Trans Union Release, and therefore Plaintiff released the current claim. (Doc. 63, p. 5) Further, Trans Union asserts that even if Plaintiff did not expressly release his claims against Trans Union, Plaintiff admitted that Trans Union's reporting of the disputed accounts was accurate and that accurate reporting is a complete defense to all claims under the FCRA. (Doc. 63, pp. 5-6)

Plaintiff's consumer report or file, which were at issue when Plaintiff placed his calls to Trans Union, are the subject of Plaintiff's FCRA violation claim. Since Plaintiff's consumer report or file "relate in any manner to Plaintiff's credit history information as reported by Trans Union," as stated in the Trans Union Release, the Plaintiff's FCRA violation claim is covered by

13

the Trans Union Release. (Doc. 57, ¶ 4) Since Plaintiff agreed to "release[] and forever discharge[] Trans Union . . . of any and all claims," the FCRA violation claim must be stricken from Plaintiff's Amended Complaint. (Doc. 57, ¶ 4) Without this claim, Plaintiff has made no claims against Trans Union and thus "undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Ross, Brovins & Oehmke, P.C.*, 463 F.3d at 487. Therefore, Trans Union's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) should be **GRANTED**.

In light of the foregoing, the Magistrate Judge does not find it necessary to weigh in on whether Plaintiff's claim against Trans Union was properly pleaded. Still, the Magistrate Judge notes that Plaintiff contradicts himself in two pleadings, his Amended Complaint and his Answer to Defendant's Counterclaim[3] (Doc. 48; Doc. 67) Plaintiff originally alleges in his Amended Complaint that "[t]he problem for Trans Union is that the Plaintiff actually had problems with the credit report that he had to dispute." (Doc. 48, ¶ 39) However, later, in his Answer to Trans Union's Counterclaim, Plaintiff asserts that his claims "have nothing to do with the accuracy or inaccuracy of information on the Plaintiff's consumer file." (Doc. 67, ¶ 19) Further discussion of Trans Union's Counterclaim is below.

### E. Trans Union Counterclaim

Trans Union asserted an Amended Counterclaim against Plaintiff, alleging Breach of Contract. (Doc. 55, pp. 21-23) In response, Plaintiff filed an Answer to the Counterclaim and a Motion for Summary Judgment. (Doc. 67; Doc. 90) Defendant Trans Union filed a Motion for

---

3 "In considering a motion for judgment on the pleadings, the court considers the pleadings." *McGath v. Hamilton Local School Dist.*, 848 F.Supp.2d 831, 836 (S.D. Ohio 2012). FED. R. CIV. P. 7(a)(3) defines a pleading as "an answer to a counterclaim designated as a counterclaim." Therefore, the Court may consider assertions contained within Plaintiff's Answer to Defendant's Counterclaim, even though the Answer was not filed in direct response to the Motion for Judgment on the Pleadings at issue.

Extension of Time to Respond to Plaintiff's Motion for Summary Judgment Pending Resolution of Trans Union's Motion for Judgment on the Pleadings. (Doc. 101) Trans Union's Motion was granted on July 14, 2014. (Doc. 102) Therefore, the Court will not consider Plaintiff's Motion for Summary Judgment until it receives Trans Union's Response. In view of the other recommendations in this report, if Trans Union wishes to withdraw its counterclaim, the Magistrate Judge would recommend that the entire case be dismissed.

## IV. RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion to Stay (Doc. 75) be **DENIED**; and that Defendant Chase's Motion to Dismiss (Doc. 23) be **GRANTED;** that Defendant Ocwen's Motion to Dismiss (Doc. 26) be **GRANTED**; and that Defendant Trans Union's Motion for Judgment on the Pleadings (Doc. 62) be **GRANTED**.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days, after being served with a copy of the Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S. 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2002).

**ENTERED** this ___ day of August, 2015.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge